MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

Case No. 08–21747–CIV–UNGARO.

United States District Court,
S.D. Florida.

June 17, 2009.

Dexter Wayne Lehtinen, Felippe Moncarz, Kelly Brooks Smith, Lehtinen Riedi

Brooks Moncarz, P.A., Sonia Escobio O'Donnell, Jorden Burt LLP, Miami, FL, for Plaintiff.

Edward S. Geldermann, United States Attorney's Office, Miami, FL, Mark A. Brown, United States Department of Justice, Washington, DC, for Defendants.

## ORDER ON MOTION TO DISMISS

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, or, in the Alternative, Motion for Judgment on the Pleadings, filed on March 20, 2009. (D.E.111.) Plaintiff filed its Response in opposition on April 6, 2009. (D.E.122.) Defendants filed their Reply in further support of their Motion on April 16, 2009. (D.E.124.)

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. This case arises out of the Modified Water Deliveries Project (the "MWDP"), which was authorized by the Everglades National Park Protection and Expansion Act of 1989 (the "ENPPE Act"), Pub.L. No. 101–229, 103 Stat.1946, 16 U.S.C. § 410r–8, in order to restore more natural water flows in the Everglades. (Am. Compl. ¶ 24.) In June 2008, the Corps issued its *Modified Water Deliveries to Everglades National Park Tamiami Trail Modifications Final Limited Reevaluation Report and Environmental Assessment* (the "LRREA") and an associated Finding of No Significant Impact (FONSI). (Am. Compl. ¶¶ 32–53.) Throughout the LRREA process, the Corps used a group of advisors which Plaintiff alleges constituted an advisory committee (the "LRR Team") to develop

performance measures and cost estimates, screen out alternatives, and make recommendations. (Am. Compl. ¶ 59.) The LRREA ultimately adopted Alternative 3.2.2.a as the Recommended Plan, as urged by the LRR Team, which proposes to relocate a one mile portion of the Tamiami Trial, currently running outside the Park, and replace it with a newly constructed one mile bridge in the eastern part of the Park. (Am. Compl. ¶ 55.)

According to Plaintiff, because of the fact that there are significant differences between Alternative 14, which was the Recommended Plan in the 2005 GRR/EIS, and Alternative 3.2.2.a., the Corps violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, by not issuing a supplemental environmental impact statement ("SEIS") on either the environmental consequences or the impact on the human environment posed by Alternative 3.2.2.a. (Am. Compl. ¶¶ 66, 69–70, 90.) Additionally, Plaintiff alleges that Defendants committed other violations of NEPA in its issuance of the LRREA and that the LRREA fails to comply with NEPA. (Am. Compl. ¶¶ 91–105.) Further, Plaintiff contends that the LRR Team constitutes an advisory committee for purposes of FACA and that the LRR Team violated numerous provisions of the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. 2, §§ 1–16. (Am. Compl. ¶¶ 108–118.)

On June 18, 2008, Plaintiff initiated this action, subsequently filing the Amended Complaint that is the subject of this Motion on July 31, 2008. (D.E.17.) Therein, Plaintiff seeks declaratory and injunctive relief for Defendants' alleged violations of NEPA and FACA.[1] (Pl.'s Mot. 1.) On November 13, 2008, the Court granted Plaintiff's motion for preliminary injunction, enjoining Defendants from taking any further steps to implement Alternative

---

1. Because the Court recently dismissed Count III from the Amended Complaint, the Court shall not address such claim herein. (*See* D.E. 40.)

3.2.2.a. (D.E.71.) Now, Defendants move the Court to dismiss Plaintiff's Amended Complaint based on a recent Congressional enactment, the "Omnibus Appropriations Act of 2009," Public Law 111–8, 123 Stat. 524 ("2009 Omnibus Act"). The 2009 Omnibus Act provides, in pertinent part:

That funds appropriated in this Act, or in any prior Act of Congress, for the implementation of the Modified Water Deliveries to Everglades National Park Project, shall be made available to the Army Corps of Engineers which shall, *notwithstanding any other provision of law,* immediately and without further delay construct or cause to be constructed Alternative 3.2.2.a to U.S. Highway 41 (the Tamiami Trail) consistent with the Limited Reevaluation Report with Integrated Environmental Assessment and addendum, approved August 2008....

111 P.L. 8, 823 (emphasis added). According to Defendants, this congressional mandate that the Corps immediately carry out Alternative 3.2.2.a deprives the Court of Article III subject matter jurisdiction with respect to Plaintiff's NEPA and FACA claims because the Court can no longer grant Plaintiff the relief it requests: specifically, that Defendants be enjoined permanently from implementing Alternative 3.2.2.a and from utilizing any material from the allegedly unlawful advisory group unless and until they comply with NEPA and FACA. (Defs.' Mot. 2.) In the alternative, Defendants argue that Plaintiff's claims must be dismissed because the 2009 Omnibus Act divests Plaintiff of any NEPA and/or FACA claim upon which relief may be granted. (Defs.' Mot. 2.)

 The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A Rule 12(b)(1) motion may be in the form of a "facial attack" on the complaint, which "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). Or, the motion may take the form of a "factual attack," which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Dunbar,* 919 F.2d at 1529. Because a factual Rule 12(b)(1) motion challenges the trial court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The court is not limited to the allegations contained in the complaint, and it may consider materials outside the pleadings to determine whether it has jurisdiction. *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims." *Id.* As it relies on information outside the pleadings, Defendants' Motion takes the form of a factual attack on subject matter jurisdiction.[2]

---

2. The Court notes that the Eleventh Circuit has repeatedly held that district courts should only rely on Rule 12(b)(1) "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Garcia v. Copenhaver, Bell & Associates,* 104 F.3d 1256, 1261 (11th Cir.1997); *see also Morrison v. Amway Corp.,* 323 F.3d 920, 925 (11th Cir.2003). "[J]urisdiction becomes inter-twined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Morrison,* 323 F.3d at 926. However, in this case, because the bases for the Court's subject matter jurisdiction and Plaintiff's substantive claim—the APA and NEPA/FACA, re-

Defendants first contend that, as a result of the 2009 Omnibus Act, there is no longer any case or controversy for which the Court can grant effective judicial relief. (Defs.' Mot. 1.) Article III of the Constitution limits the judicial power of the United States to matters that present actual cases or controversies. U.S. Const. art. III, § 2, cl. 1. The "case or controversy" requirement of Article III prohibits federal courts from considering questions that cannot affect the rights of the litigants in the case before them. *See Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees of America Div. 998 v. Wis. Employment Relations Bd.*, 340 U.S. 416, 418, 71 S.Ct. 373, 95 L.Ed. 389 (1951) (a court may not give an opinion where it cannot grant relief or affect the rights of the litigants before it). If events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed because mootness deprives the court of subject matter jurisdiction. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–79, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990),

As the Court has previously noted, congressionally mandated project-specific exemptions from the reach of statutes such as NEPA must be explicit. *See*

*Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 440, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) (stating that Congress has the power to amend, suspend, or repeal a statute through an appropriations bill, as long as it does so clearly); *see also Sierra Club v. Andrus*, 610 F.2d 581, 601 (9th Cir. 1979); *Izaak Walton League of America v. Marsh*, 655 F.2d 346, 367–68 (D.C.Cir. 1981). In its Order on Defendants' previous motion to dismiss, the Court, recognizing the two circumstances[3] under which courts have recognized a congressionally-mandated NEPA exemption, found that Congress's late 2008 continuing resolution providing funds to the Corps "to immediately carry out Alternative 3.2.2.a to U.S. Highway 41" did not exempt Defendants from complying with NEPA or FACA. (D.E. 59 at 2–5 (citing H.R. 2638; Pub.L. No. 110–329; 110th Cong.2d Sess.; 122 Stat. 3574 at Sec. 153).) The Court based its ruling on the fact that "[w]hile the recent resolution does in fact mention the Modified Water Deliveries Project and Alternative 3.2.2.a by name, the resolution fails to either (1) include the 'notwithstanding any other provision of law' language in its approval of the project or (2) mention NEPA by name, despite the fact that it specifically mentions the project's compli-

spectively—are different, the Court is satisfied that jurisdiction here is not intertwined with the merits of the cause of action. *See id.*

3. First, Congress can specifically mention (1) the project at issue by name and (2) that such project is not subject to NEPA. *See, e.g., Friends of the Earth, Inc. v. Weinberger*, 562 F.Supp. 265 (D.D.C.1983) (Court found that claimed NEPA violations were moot where Congress enacted resolution providing that report in question would "not be subject to the requirements of … [NEPA] relating to environmental impact statements."). Second, Congress can (1) specifically mention the project at issue by name and (2) exempt the project generally from other statutory schemes by specifying that the project is to

proceed "notwithstanding any other provision of law." *See, e.g., Bald Eagle Ridge Protection Ass'n, Inc. v. Mallory*, 119 F.Supp.2d 473 (M.D.Pa.2000) (finding "a clear congressional intent to suspend the operation of the statutes [including NEPA] on which plaintiffs base their claims" with respect to specific project where subsequent statute stated that project was to be implemented "[n]otwithstanding any other provision of law"); *see also National Coalition to Save Our Mall v. Norton*, 161 F.Supp.2d 14 (D.D.C.2001) (dismissing as moot plaintiffs' NEPA claims where Congress had commanded (1) that project in question be constructed expeditiously "[n]otwithstanding any other provision of law" and (2) that decision regarding location of project was not subject to judicial review).

ance with the Federal Water Pollution Control Act." (D.E. 59 at 4–5.)

■■■ Now, in the 2009 Omnibus Act, Congress has once again ordered the Corps to "immediately and without further delay construct or cause to be constructed Alternative 3.2.2.a," specifically mentioning the MWDP. 111 P.L. 8, 823. However, in this iteration of its directions regarding the MWDP, Congress has also included the "notwithstanding any other provision of law" language that others courts have previously found to indicate a Congressionally-mandated exemption. Given the above, the Court finds that Congress has exempted the bridging of the Tamiami Trail from compliance with NEPA and FACA.[4]

The timing and contents of the 2009 Omnibus Act, in light of the Court's Order on Defendants' previous motion to dismiss, further make clear Congress's intent to suspend the operation of NEPA and FACA here. A few short months after the Court found that Congress's late 2008 continuing resolution aimed at the Tamiami Trail project did not manifest an intent to exempt such project from NEPA and FACA compliance because Congress had not included language such as "notwithstanding any other provision of law," Congress passed a similar resolution (the 2009 Omnibus Act) aimed at the Tamiami Trail project that instructed the Corps to implement proposed Alternative 3.2.2.a "notwithstanding any other provision of law, immediately and without further delay." See 111 P.L. 8, 823. The Court believes that the fact that Congress included in its recent resolution the very language that the Court indicated would be sufficient to manifest an intent to suspend the operation of NEPA and FACA is not coinciden-

tal but rather underscores the Court's conclusion here regarding Congress's clear intent in the 2009 Omnibus Act with respect to the Tamiami Trail project. As such, the Court finds that it lacks subject matter jurisdiction over this matter because it can no longer give Plaintiff meaningful relief, as the controversy between the parties has been mooted by the 2009 Omnibus Act.

Although Plaintiff argues that Defendant's argument for implied repeal runs afoul of *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("*TVA*"), the Court finds that *TVA* is distinguishable. The *TVA* court based its ruling on the fact that the series of appropriations measures, which "represented relatively minor components of the lump-sum amounts for the *entire* TVA budget," contained "nothing ... which states that the Tellico Project was to be completed irrespective of the requirements of the Endangered Species Act." *Id.* at 189, 98 S.Ct. 2279. Here, both the language Congress has included in the 2009 Omnibus Act—"notwithstanding any other provision of law"—and the timing of the 2009 Omnibus Act in relation to the Court's Order on Defendants' previous motion to dismiss manifest a clear intent to repeal NEPA and FACA for purposes of the Tamiami Trail modification project. *See id.* at 189–90, 98 S.Ct. 2279 (citing *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936) ("the intention of the legislature to repeal must be clear and manifest")). Thus, the 2009 Omnibus Act is not an implied limited repeal of NEPA and FACA but an explicit exemption of the Tamiami Trail modification project from the reach of such statutes, and the *TVA* court's disfavor of re-

---

4. The Court has considered and disregards Plaintiff's argument regarding statutory construction when Indian rights are implicated. (*See* Pl.'s Resp. 10.) The Court does not be-

lieve that the disputed appropriations language is ambiguous or that tribal sovereignty is at issue in this matter.

peals by implication is inapplicable to the case at hand. *See id.* at 190 (internal quotations and citations omitted) ("The doctrine disfavoring repeals by implication applies with full vigor when the subsequent legislation is an appropriations measure."). The Court further notes that in the aftermath of *TVA,* Congress successfully exempted the Tellico Project from the Endangered Species Act in a fashion very similar to the circumstances of the instant case: in an appropriations bill that ordered the construction of the Tellico Project "notwithstanding the provision of ... any other law."[5] *See* 125 Cong. Rec. H. 1503, June 18, 1979, Energy and Water Development Appropriations Act of 1980, Pub L. No. 96–99, 93 Stat. 437, 449–50.

Additionally, while the Court is mindful of the potentially problematic nature of allowing limited repeals of environmental statutes through appropriations measures, there is no extant case law which proscribes this exemption method. Although the law review articles that Plaintiff cites decry this practice, the most recent one explains that the Supreme Court has, through its decisions, actually "provide[d] promoters of appropriations riders with yet another roadmap." Richard J. Lazarus, *Congressional Descent: The Demise of Deliberative Democracy in Environmental Law,* 94 GEO. L.J. 619, 641 (2006). Thus, in the absence of any binding precedent which outlaws the creation of statutory exemptions through appropriations bills, the Court is bound to give life to what it has determined to be Congress's clear intent.

■■■■ Plaintiff's argument that the 2009 Omnibus Act is unconstitutionally vague is a nonstarter. The Court first notes that maintaining that an appropriations bill is unconstitutionally vague is arguably misplaced, for such an argument is most commonly used to challenge the fairness of criminal statutes. *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Additionally, even if the Court were to consider the constitutionality of the 2009 Omnibus Act on such grounds, the 2009 Omnibus Act passes the vagueness test. "There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *United States v. Bamberg,* 478 F.3d 934, 937 (8th Cir.2007) (citation omitted). Because the 2009 Omnibus Act does not proscribe any conduct, the Court does not see how it could be unconstitutionally vague.

■■■■ Plaintiff's argument that the 2009 Omnibus Act is an unconstitutional delegation of power fails as well. The plain language of the 2009 Omnibus Act contains no indication that the Corps has been granted discretion to choose which laws to comply with and which to ignore. In constructing the project, the Corps is performing an exclusively executive function. The federal courts remain the final arbiter of which laws apply to the Corps's construction of the Tamiami Trail bridge. *Cf. Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.,* 482 F.3d 1157, 1169 (9th Cir.2007).

---

**5.** The Court is aware that this appropriations bill specifically named the Endangered Species Act as a statute from which the Tellico Project was exempted. However, the Court is unconcerned about the lack of a specific mention of either NEPA or FACA in the 2009 Omnibus Act; the Tamiami Trail project faces a number of current (and perhaps future) lawsuits from Plaintiff regarding violations of a variety of statutes. It is likely that Congress decided to use the more general exempting language that it chose because it was not feasible to name each of these statutes in the 2009 Omnibus Act

■ Plaintiff's separation of powers argument also is without merit. According to Plaintiff, Defendants' interpretation of the 2009 Omnibus Act renders it unconstitutional because Congress cannot direct a particular decision in a pending case without amending the law underlying the litigation. (Pl.'s Resp. 13.) The Court disagrees, for the 2009 Omnibus Act compels changes in law, specifically that the Tamiami Trail bridging project be exempted from NEPA and FACA, among other laws, not findings or results under old law. *See Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 437, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).

■ Plaintiff further contends that accepting Defendants' interpretation of the 2009 Omnibus Act transforms it into an unconstitutional Bill of Attainder. (Pl.'s Resp. 14–17.) This argument is specious at best. A law is a prohibited Bill or Attainder if it applies with specificity and imposes punishment. *See Foretich v. United States*, 351 F.3d 1198, 1217 (D.C.Cir.2003) (citation and internal quotations omitted). The 2009 Omnibus Act does not even apply to Plaintiff Tribe and its members, much less punish them; it simply directs the Corps to initiate construction of the Tamiami Trail bridging project notwithstanding any other provision of law.

■ Finally, Plaintiff's argument that the 2009 Omnibus Act violates Plaintiff's due process and equal protection guarantees fails. According to Plaintiff, construction and operation of the Tamiami Trail bridge component without proper review would treat Plaintiff differently from non-Indians because it would cause Plaintiff Tribe to shoulder the burden of harm for the perceived benefit of non-Indians. (Pl.'s Resp. 17.) However, the 2009 Omnibus Act does not implicate any constitutionally protected fundamental rights; as explained above, it exempts the Tamiami Trail bridging project from the reach of laws such as NEPA and FACA. The mere fact that the 2009 Omnibus Act moots litigation instituted by Plaintiff Tribe and allows such project to proceed, much to the consternation of Plaintiff, does not demonstrate that Plaintiff Tribe has been treated differently from non-Indians, particularly because, as explained above, the statute only applies to the Corps.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion (D.E.111) is GRANTED [6] and this matter is DISMISSED.[7] It is further

---

**6.** Although Plaintiff argues that this Court lacks jurisdiction to consider the instant motion because of Defendants' pending appeal of the preliminary injunction in the Eleventh Circuit, the Eleventh Circuit has explicitly stated that "[w]hen an appeal is taken from the denial or granting of a preliminary injunction, the district court retains full authority and jurisdiction to proceed toward a judgment on the merits." *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774, 789 n. 13 (11th Cir.1984). Thus, the Court finds that it has jurisdiction over the issues addressed in Defendants' motion to dismiss. The mere fact that Defendants broached the issue of the 2009 Omnibus Act in their reply brief before the Eleventh Circuit is irrelevant; new issues raised for the first time in a reply brief are not properly before a court. *See Tallahassee Mem. Regional Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n. 16 (11th Cir.1987) ("it is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief"). In the event that the Court lacks jurisdiction at this time, the case is stayed and shall be dismissed upon the conclusion of Defendants' Eleventh Circuit appeal.

**7.** Although Plaintiff has requested an opportunity to amend its Complaint in the event that the Court dismisses the case, the Court sees no reason to allow leave to amend, considering that the controversy between the parties has been rendered moot.

ORDERED AND ADJUDGED that Preliminary Injunction (D.E.71) entered by this Court is DISSOLVED.